IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DENISE MAHER,

          Plaintiff,

vs.                                                     CIVIL NO. 06-714 JP/LFG

STEPHEN L. SOLOMON,

          Defendant.

FASTBUCKS WAGE AND
BENEFITS, LLC,

          Garnishee.

# REPORT AND RECOMMENDATION
# THAT JUDGMENT DEBTOR'S OBJECTIONS BE DENIED[1]

THIS MATTER is before the Court on an Order of Reference [Doc. 116]. The Court conducted a hearing on February 24, 2009.

    1. The parties stipulated that the statements contained in the attachments to the pleadings, including the declarations, affidavits, and deposition testimony, could be considered as competent, admissible evidence. They were submitted without objection.

    2. Denise Maher ("Maher"), individually, and on behalf of herself and similarly situated individuals, filed suit against Stephen L. Solomon ("Solomon") alleging violations of the Fair Debt Collection Practices Act.

    3. On, February 1, 2008, the trial Court certified Maher's lawsuit as a class action under Fed. R. Civ. P. 23.

---

[1] Within ten (10) days after a party is served with a copy of this Report and Recommendation, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such Report and Recommendation. A party must file any objections by March 16, 2009 if that party wants to have appellate review. If no objections are filed, no appellate review will be allowed.

4. Solomon and Maher settled the dispute by Solomon agreeing to pay Maher the sum of $2,500, and further agreeing to have an injunction entered against him concerning future representations and future conduct *vis-a-vis* collection letters.

5. The trial judge entered two Judgments in favor of Maher and against Solomon.[2] [Doc. Nos. 93, 108.] The first was a Judgment in the amount of $2,500 [Doc. 93]; and the second, a Judgment in favor of Maher and against Solomon, representing attorney fees, taxes and costs in the amount of $25,793.56, incurred in the prosecution of the class action [Doc. 108] as the prevailing party under Fed. R. Civ. P. 54(d).

6. Solomon is the judgment debtor. He is a resident of the State of Texas and has been a Texas resident for 22 years. [Solomon Aff. at ¶ 2.]

7. Solomon is employed by FastBucks Wage and Benefits, LLC, a Nevada corporation that engages in business in various states, including the State of New Mexico.

8. Solomon, as an attorney, performs multiple responsibilities for his employer. He is Vice President of FastBucks' administration and serves as its general counsel. He is a corporate officer, holding the position of Secretary, and is also a member of the Board of Directors (Solomon Depo. #1, p. 3, lines 12-17). In addition, Solomon is a shareholder of FastBucks.

9. Solomon's salary is earned, in part, for managing FastBucks' legal department, which engages in collection activities in the State of New Mexico. He acknowledges that collection letters are sent to New Mexico residents in an effort to collect defaulted loans. He speaks to debtors in New Mexico who call about the letters received (Solomon Depo. #1, p. 44, lines 6-11). He supervises various debt collectors and sends letters to New Mexico residents. FastBucks sent so

---

[2]Counsel for Maher referred to three judgments at the evidentiary hearing, but here were actually two separate judgments entered by the Court.

many letters under the Solomon letterhead that they were printed and mailed by a third-party mailing company, Lason Systems, Inc.  (Solomon Depo. #1, p. 48, lines 24-25,  p. 49, lines 1-10).

10.    A FastBucks' collector in New Mexico, Rudy Campos, testified that FastBucks' collectors were sending out the Solomon letters on a daily basis.  (Campos Depo., p. 87, lines 24-25; p. 88, lines 1-11).

11.    When a determination is made to engage in litigation, Solomon hires and manages private attorneys to file lawsuits to collect debts in New Mexico.  (Solomon Depo. #1, p. 65, lines 4-17).  He determines whether the separate New Mexico FastBucks' entities will file their own collection lawsuits.  (Solomon Depo. #1, p. 66, line 25; p. 67, lines 1-13).  Solomon also monitors collection calls regarding New Mexico loans.  (Solomon Depo. #1, p. 176, lines 14-25; p. 177, lines 1-25; p. 178, lines 1-17).

12.    When governmental regulatory agencies, such as the New Mexico Attorney General's Office, make inquiries concerning New Mexico consumer complaints, Solomon is the individual who responds to those inquiries.  Solomon has responded to inquiries posed by the New Mexico Attorney General's Office as well as the State's Financial Institutions Division.  (Solomon Depo. #1, p. 165, lines 22-25; p. 166, lines 1-25; p. 167, lines 1-23).

13.    In carrying out his work responsibilities, Solomon comes to New Mexico on a regular basis.  For example, Solomon visits FastBucks' 28 New Mexico Offices. [Doc. 123, p. 10, n. 5]. *See also*  http://www.nmprc.state.nm.us (New Mexico Public Regulation Commission's records demonstrate that Solomon is the organizer and incorporator of the twenty-five FastBucks' corporations in New Mexico). [Doc. 123, p. 11.]

14.     Solomon estimates spending up to three weeks per year attending to his employer's business in New Mexico.  He is a registered lobbyist on behalf of his employer, and engages in

3

lobbying activities before the New Mexico State Legislature.  Indeed, in 2008, legislation affecting high-interest "payday loans" was heavily debated and lobbied by business and trade associations, as well as consumer groups.  Solomon was involved as a lobbyist on behalf of his employer.

15.  Solomon met counsel for Maher when both were members of the New Mexico Governor's Payday Loan Task Force in 2005-2006.  (Solomon Depo. #1, p. 39, lines 12-24).

16.  In 2006, Solomon made ten trips to New Mexico on FastBucks' business; five to ten trips in 2007, and five to ten trips in 2008. [Solomon Decl. at ¶ 2.]

17.  Solomon spent between 7 to 21 days in New Mexico performing works for FastBucks in 2006; 7 to 21 days in 2007; and 7 to 21 days in 2008.  [Solomon Decl. at ¶ 3.]

18.  In 2006, 2007, and 2008, he visited FastBucks' stores in Alamogordo, Albuquerque, Farmington, Gallup, Rio Rancho, Española, Clovis, Las Cruces, Roswell, Santa Fe, and Sunland Park.  [Solomon Decl. at ¶ 4.]

19.  During his business activities in New Mexico, Solomon conducted investigations, took photographs, confirmed that state required documents and signs were present, taught FastBucks legal compliance issues, and reviewed files in a legal compliance audit.  [Solomon Decl. at ¶ 5.]

20.  On occasions in 2006, 2007 and 2008, Solomon conferred with the New Mexico Financial Institutions Division somewhere between 5 and 20 times per year.  [Solomon Decl. at ¶ 6.]

21.  During 2006 and 2007, Solomon was engaged in the analysis and advocacy of New Mexico legislation and administrative rule-making related loans made as a consumer lender.  He participated in legislative activities in New Mexico between 7 and 21 days in 2006, between 7 and 21 in 2007, and visited the New Mexico Legislature for several days in 2008 during interim committee meetings. [Solomon Decl. at ¶¶ 9, 10.]

22. As a Texas resident, Solomon argues that his salary is earned in the State of Texas and paid to him in Texas. Thus, he contends the State of Texas has the dominant interest in this case, and that Texas laws relating to garnishment should apply.

23. Under Texas garnishment laws, wages may not be garnished. Therefore, if Texas law applies, Maher is unlikely to collect the judgments.

24. Maher contends that FastBucks' presence and business activities in New Mexico, which led to the judgment against Solomon, are sufficient to allow New Mexico's garnishment laws to apply.

25. Maher further argues that a portion of Solomon's wages are directly attributable to his work and conduct in New Mexico. While FastBucks is an entity organized and incorporated in the State of Nevada, a portion of Solomon's wages from FastBucks was earned as a result of his direct activities and presence in the State of New Mexico.

26. In Huntington Nat'l Bank v. Sproul, 116 N.M. 254, 258, 861 P.2d 935 (1993), the New Mexico Supreme Court cited 46 Am.Jur.2d Judgments § 897, at 1031 (1969) for the proposition that "Matters relating to the enforcement of judgments are governed by the law of the forum." The Court held that New Mexico law was correctly applied in that case.

27. In the context of garnishment, New Mexico law provides that the plaintiff believed that a named garnishee: "(1) is indebted to the defendant and that the debt is not exempt from garnishment; or (2) holds personal property belonging to the defendant. § 35-12-1(D)(1 and 2) NMSA 1978.

28. In this case, the garnishee, FastBucks, admitted that it holds property belonging to the Defendant, Solomon.

29. Even relying on Texas law, Baumgardner v. Southern Pac. Co., 177 S.W.2d 317, 320 (Tex. App. 1943), the Texas court held, "Exemption laws are local in their nature and have no extraterritorial force or operation." In Baumgardner, a writ of garnishment was obtained against a Texas resident in the State of Arizona. The garnishment sought to collect payment for alimony owed Baumgardner's former spouse. Mrs. Baumgardner served a writ of garnishment on the Southern Pacific Company, a Kentucky corporation, which conducted some if its business in Arizona. That corporation was Mr. Baumgardner's employer, and it had a presence in Texas, where Mr. Baumgardner was a resident. Mr. Baumgardner's wages were earned and paid in the State of Texas.

An action was brought against Southern Pacific Company in the Texas court and the Texas Court of Civil Appeals determined that although the judgment debtor's wages would be exempt in Texas garnishment proceedings, Arizona's exemption law applied to the Arizona garnishment proceedings. Therefore, the Texas resident judgment debtor's wages were not exempt.

30. New Mexico maintains the dominant interest in this case. The lawsuit was filed by a New Mexico resident in a New Mexico court, and the alleged violations of law occurred in New Mexico. The loan in question was issued by FastBucks in New Mexico; the alleged default occurred in New Mexico; and the collection efforts occurred in New Mexico. A New Mexico court certified Maher's claims as a class action. The parties settled their lawsuit in New Mexico, and the judgments were issued in New Mexico.

31. The Baumgardner situation is mirrored by the present garnishment proceedings. Although Solomon is a resident of Texas and earns the majority of his wages as a result of work performed on behalf of his employer in the State of Texas, Texas garnishment laws are not applicable. It is New Mexico's garnishment law that must be applied.

32.  New Mexico's interests predominate over those of any other state, and the Court concludes that New Mexico exemption laws apply.

33.  Under New Mexico law, 35-12-3:

> [S]ervice of a garnishment upon the garnishee has the effect of attaching all . . . wages or salary in excess of the amount exempt under Sections 35-12-7 . . . in the garnishee's possession or under his control at the time of service of the garnishment or which may come into his possession or under his control or be owing by him . . . .

§ 35-12-3(A) NMSA.  The Court rejects Solomon's claim that the State of Texas has the dominant or prevailing interest in this case, and concludes that the State of New Mexico's interests predominate.

## **Recommendation**

After consideration of the submitted evidence, arguments and authorities, the undersigned Magistrate Judge recommends that the Garnishee's objections be denied.[3]

*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge

---

[3] The objections were filed pursuant to 28 U.S.C. § 3205(c)(5).  However, the parties concede that the foregoing section applies to garnishment proceedings involving the United States, and that the objection should have been filed pursuant to NMSA 1978 § 35-12-5.  Maher did not object to an in-court amendment to state the proper citation. [Doc. 126, Minutes.]